**LAW OFFICES OF**
**RICHARD C. SPENCER, PC**
624 South Grand Avenue
One Wilshire Building, Suite 2200
Los Angeles, California 90017
Telephone: (213) 629-7900
Fax: (213) 629-7990
Email: rspencer@rspencerlaw.com
State Bar No. 43720

Attorneys for Defendant
A-MARK PRECIOUS METALS, INC.

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MELANIE E. DAMIAN, solely in her capacity as Permanent Receiver in the matter of United States Commodity Futures Trading Commission vs. Hunter Wise Commodities, LLC, Hunter Wise Services, LLC, Hunter Wise Credit, LLC, Hunter Wise Trading, LLC, et al., U.S. Dist. Court, Southern District of Florida, Case No. 12-81311-CIV-MIDDLEBROOKS/BRANNON,<br><br>Plaintiff,<br><br>vs.<br><br>A-MARK PRECIOUS METALS, INC.,<br><br>Defendant. | CASE NO. 2:16-cv-07198-FMO-SSx<br><br>REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM<br>----------------------------------------<br>REQUEST FOR JUDICIAL NOTICE<br><br>Date: December 15, 2016<br>(Per Clerk Consent)<br>Time: 10:00 a.m.<br>Ctrm: 22, 312 N. Spring St., LA CA<br><br>Hon. Fernando M. Olguin |

Defendant A-MARK PRECIOUS METALS, INC. ("Defendant" or "A-Mark") hereby submits its Reply to Plaintiff's Opposition to its Motion to Dismiss Complaint for Failure to State A Claim.

Defendant further requests the Court to take judicial notice of the court records of the Receivership action which appointed Plaintiff to her capacity as Receiver, being the United States District Court for the Southern District of Florida, Case No. 12-81311-CIV-- MIDDLEBROOKS/BRANNON, and specifically the Order Temporarily Appointing Special Corporate Monitor, which initially appointed Plaintiff as the Special Monitor and Corporate Manager (DE 77) which Order Plaintiff specifically pled in paragraph one of the Complaint, and the Order on Plaintiff's Motion for Preliminary Injunction which appointed Plaintiff as the Corporate Monitor to take exclusive control, custody and possession of all assets of Hunter Wise, which again Plaintiff specifically pled in paragraph two of the Complaint. Excerpts of the Orders are attached hereto as Exhibits A and B, respectively. The purpose of the Request for Judicial Notice is to establish, contrary to the contention of Plaintiff, that Plaintiff had the full power and authority to investigate and file suit as early as February 22, 2013.

Since both Orders were specifically pled in the Complaint, the Court may consider them without taking judicial notice, but out of an abundance of caution, Defendant is making this request. In addition, in a Rule 12(b)(6) motion, the Court may take judicial notice of matters of public record. *Funk v. Stryker Corp.* (5th Cir. 2011) 313 F.3d 777, 783.

/ / / /

Dated: December 1, 2016

Respectfully submitted,

LAW OFFICES OF RICHARD C. SPENCER, P.C.

By: ____/s/ Richard C. Spencer________

RICHARD C. SPENCER
Attorneys for Defendant
A-MARK PRECIOUS METALS, INC.
624 South Grand Avenue
One Wilshire Building, Suite 2200
Los Angeles, California 90017
Phone: (213) 629-7900
Fax: (213) 629-7990
Email: rspencer@rspencerlaw.com

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

I. DEFENDANT HAS MET THE STANDARD APPLICABLE TO A MOTION TO DISMISS 1

II. THE RECEIVER'S ARGUMENT THAT THE STATUTE OF LIMITATIONS DOES NOT BEGIN TO RUN UNTIL A FINAL JUDGMENT APPLIES ONLY TO COMMON LAW CLAIMS, AND NOT THE STATUTORY UVTA CLAIMS ........................................................ 2

III. THE STATUTORY UVTA CLAIM IN COUNT II (CONSTRUCTIVE FRAUD) EXPIRED FOUR YEARS FROM THE DATE OF THE TRANSFER AND CANNOT BE TOLLED......... 3

IV. THE STATUTORY UVTA CLAIMS IN COUNT I (ACTUAL FRAUD) EXPIRED FOUR YEARS FROM THE DATE OF THE TRANSFER, OR IN CASE OF DELAYED DISCOVERY, NO LATER THAN ONE YEAR AFTER THE CLAIMS WERE OR COULD HAVE BEEN DISCOVERED.......................................................................................... 3

V. THE DOCTRINE OF ADVERSE DOMINATION DOES NOT APPLY............................... 5

VI. ALL CLAIMS ARE BARRED IN ANY EVENT AS TO ANY TRANSACTION PRIOR TO SEPTEMBER 22, 2009 ........................................................................................... 5

VII. EACH OF THE CLAIMS ARE BARRED BECAUSE THE COMPLAINT ESTABLISHES THAT THE TRANSFERS WERE RECEIVED IN GOOD FAITH AND FOR REASONABLY EQUIVALENT VALUE.......................................................................... 6

A. UVTA and Fraudulent Conveyance Claims Do Not Encompass the Type of Commercial Transactions in This Case ......................................................................... 8

B. Good Faith Exists in the Absence of Collusion or Active Participation in the Alleged Fraud 9

C. The Conclusory Allegation that A-Mark's Trades Assisted Hunter Wise to Violate the Dodd-Frank Act, is Not Supported by the Complaint ........................................................ 11

VIII. COUNT III FOR UNJUST ENRICHMENT DOES NOT STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED – UNJUST ENRICHMENT IS MERELY A REMEDY 12

IX. CONCLUSION ........................................................................ 13

# TABLE OF AUTHORITIES

## Cases

(*California Medical Assn. v. Aetna U.S. Healthcare of California, Inc*. (2001) 94 Cal.App.4th 151, 172, 114 Cal.Rptr.2d 109 .......... 13

*(Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1593, 80 Cal.Rptr.3d 316 .......... 12

*Annod Corp. v. Hamilton and Samuels* (2002) 100 Cal.App. 4th 1286 .......... 10, 11

*Beal v. Smith* (Cal. 1920) 46 Cal. App. 271 .......... 5

*Cortez v. Vogt* (1997) 52 Cal.App.4th 917 .......... 2

*Donell v. Kowell* (2008) 533 F.2d 762, 777 .......... 9

*Durell v. Sharp Healthcare*, 183 Cal.App. 4th 1350, 1370 .......... 12, 13

*Funk v. Stryker Corp.* (5th Cir. 2011) 313 F.3d 777 .......... 2

*Levine v. Blue Shield of California* (2010) 189 Cal.App. 4th 1117 .......... 12

*Lewis v. Superior Court* (1994) 30 Cal.App.4th 1850, 1958-1859 .......... 10

*R2 Invs. LDC v. Phillips* (5th Cir. 2005) 401 F.3d 638, 642 .......... 8

*Richardson v. White* (1861) 18 Cal. 102, 106 .......... 10

*United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.* (9th Cir. 2013) 720 F.3d 1174, 1178 .......... 2

## Statutes

12 West's Ann.Civ.Code (1994 pocket supp.) p. 161 .......... 10

Civil Code Section 3439.08 .......... 10

Civil Code Section 3439.09(a) .......... 4

Civil Code Section 3439.09(b) .......... 3, 6

Civil Code Section 3439.09(c) .......... 6, 15

Civil Code Section 3439.14(d) .......... 2

## Other Authorities

8 Witkin, California Procedure, 5th Ed., Enforcement of Judgment, Section 479, p. 516 .......... 9

## Rules

Rule 12(b)(6)........................................................................................................................ 2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. DEFENDANT HAS MET THE STANDARD APPLICABLE TO A MOTION TO DISMISS

The Receiver misinterprets or misunderstands the Motion. The Motion neither seeks to dispute the veracity of the facts alleged in the complaint, nor argue that the Receiver has failed to rebut an anticipated defense, both of which underlie (Opp., p. 4, lines 1-16) the Receiver's contention that A-Mark has not met the applicable standard for such Motions.

First, the Receiver's argument is inapplicable to the grounds of the Motion based upon the Statute of Limitations and Statute of Repose. The Receiver's claim is either barred as reflected by the allegations of the Complaint, or it is not.

With respect to the ground of the Motion related to the substance of the Complaint, the Motion is based upon the fact that the allegations of the Complaint clearly establish facts which preclude a finding of liability. In other words, there are no set of facts under the allegations of the Complaint and no cognizable legal theory under which the Receiver would be entitled to relief pursuant to the Complaint.

For example, the allegations of the Complaint establish the inability of the Receiver, under any set of facts, to establish all of the necessary elements of Count II (constructive fraud) because the allegations of the Complaint conclusively establish the absence of the necessary element of the lack of reasonably equivalent value. For Count II, the requirement of reasonably equivalent value is an element of the claim and not a defense.

Similarly, the allegations of the Complaint conclusively establish both reasonably equivalent value and A-Mark's good faith in accepting the payments of

interest and spread made by Hunter Wise. Given that conclusion, section 3439.08(a) of the UVTA[1] precludes a finding that the transfers were voidable. This is true even though in Count I the elements of reasonably equivalent value and good faith are a defense.

A Rule 12(b)(6) Motion may be based upon a statute of limitations or other affirmative defense, so long as the Complaint sets forth the facts establishing such defense. *United States ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.* (9th Cir. 2013) 720 F.3d 1174, 1178.

## II. THE RECEIVER'S ARGUMENT THAT THE STATUTE OF LIMITATIONS DOES NOT BEGIN TO RUN UNTIL A FINAL JUDGMENT APPLIES ONLY TO COMMON LAW CLAIMS, AND NOT THE STATUTORY UVTA CLAIMS

The cases cited by Plaintiff for the proposition that the statute of limitations begins to run upon the entry of a final judgment apply that rule only to the common law claims, and not to the UVTA statutory claims. For example, in *Cortez v. Vogt* (1997) 52 Cal.App.4th 917, the court pointed out that "The new act simply adds an efficient, optional, and additional remedy to a creditor who has not reduced his claim to judgment . . . ." (52 Cal.App.4th at 937.)

Even Plaintiff's quote from the *Cortez* case makes it clear that the final judgment accrual applies to the common law claims that remain available to a creditor as an alternative to the statutory claims:

---

[1] The Receiver's unsupported contention that the predecessor Uniform Fraudulent Transfer Act, and not the current Uniform Voidable Transfer Act, applies to these transactions is wrong. While it is correct that the name of the Act was changed as of January 1, 2016, the Act specifically provides that where the substance did not change significantly on that date, which is the case for the relevant sections, the 2016 provisions "shall be construed as restatements and continuations, and not as new enactments." Civil Code Section 3439.14(d) (the Act is Civil Code Secs. 3439 et seq.)

> "As to the remedies available under common law, the California Supreme Court has held that 'the limitations period begins to run at the time of judgment in the underlying action, but if the creditor is unaware of the fraudulent conveyance, the limitation period begins to run when the creditor discovers the fraudulent conveyance." (Opp., p. 7, lines 16-19, emphasis added.)

Thus, the final judgment rule does not apply to the statutory claims in Counts I and II, and to the extent they are incorporated in Count III (Unjust Enrichment).

## III. THE STATUTORY UVTA CLAIM IN COUNT II (CONSTRUCTIVE FRAUD) EXPIRED FOUR YEARS FROM THE DATE OF THE TRANSFER AND CANNOT BE TOLLED

UVTA (Civil Code) Section 3439.09(b) provides that claims "are extinguished" if action is not brought within four years of the transfer. The last transfer occurred in March 2012 (Complaint, para. 45), and the statutory claim in Count II was extinguished as of March 2016. This action was not brought until September 22, 2016, well after the claim was extinguished. To the extent Count III for unjust enrichment incorporates the statutory claim, such claim is also extinguished.

## IV. THE STATUTORY UVTA CLAIMS IN COUNT I (ACTUAL FRAUD) EXPIRED FOUR YEARS FROM THE DATE OF THE TRANSFER, OR IN CASE OF DELAYED DISCOVERY, NO LATER THAN ONE YEAR AFTER THE CLAIMS WERE OR COULD HAVE BEEN DISCOVERED

For the statutory claims in Count I for intentional fraud, an action can be brought after the expiration of four years from the transfer, in which event the action must be brought within one year after the transfer was or could reasonably discovered. Civil Code Section 3439.09(a).

Although the statutory claims could be subject to an extension of the four year limitations period, the fact is that here they are not, and even if they were, the extension of one year from the date of actual or constructive knowledge of the transfer does not make this action timely.

The basic four year period expired in March 2016. There was no delayed discovery. Not only is Plaintiff charged with the knowledge of the creditors of Hunter Wise, Plaintiff herself was personally aware of the transfers and the allegations of fraud as early as February 2013 when she was appointed Special Monitor and Corporate Manager of the Hunter Wise entities. Her appointment in the CFTC lawsuit against Hunter Wise was solely because of such allegations.

Even if the one year extension applied, it is calculated from the date of actual discovery or when the discovery could reasonably have been made. One year from February 2013 has long passed. The statutory claims contained in Count I are extinguished.

Defendant notes that Plaintiff argues that she "could not and did not discover the fraudulent transfer claims subject of this action until after the entry of the Final Judgment was authorized to investigate such claims." (Opp. p. 11, lines 6-10.) Such argument is patently false. Plaintiff obviously knew of the claims of fraudulent transfers when she was appointed as Special Monitor and Corporate Manager because of those claims. The implication that she had no authority to investigate those claims until the Final Judgment of May 16, 2014 is also patently false. Both of the Orders which Plaintiff pled in the Complaint vested Plaintiff, beginning on February 22, 2013, with such authority. The February 22, 2013 Order (Exhibit A) gives her full power to investigate (Section 8A) and to pursue lawsuits (Section 8H). The powers are continued in the second Order (Exhibit B).

Even though Plaintiff had the powers to investigate and sue as of

February 22, 2013, which she denies, that fact does not affect the expiration of the statute of limitations. The statutory claims expired in March 2016. However, despite her protestations, Plaintiff had the ability and authority to file an action more than three years before the statute expired.

## V. THE DOCTRINE OF ADVERSE DOMINATION DOES NOT APPLY

Plaintiff's attempted use of the doctrine of adverse domination must fail because the doctrine cannot be used in this fashion. The doctrine essentially prevents principals, directors, and officers of an entity (which has been expanded to insider fiduciaries such as the entity's attorneys, accountants, insurance companies and those in conspiracy with the wrongdoing insiders) from failing to take action against their self-interests. The doctrine is applicable only in cases against the insiders, as was the case in *Beal v. Smith* (Cal. 1920) 46 Cal. App. 271, cited by Plaintiff. It does not apply to suits against non-insider third parties. The same is true of the other cases cited by Plaintiff.

## VI. ALL CLAIMS ARE BARRED IN ANY EVENT AS TO ANY TRANSACTION PRIOR TO SEPTEMBER 22, 2009

Regardless of the limitations periods set forth in Sections 3439.09(a) and (b), there is no question, and Plaintiff concedes, that all transfers more than seven years before the filing of the Complaint herein are barred, whether they are statutory or common law, by the statute of repose contained in Section 3439.09(c) which applies "notwithstanding any other provision of law." Since the Complaint, on its face, seeks recovery for admittedly extinguished claims (pursuant to the terms of Section 3439.09(c)), the Motion must be granted as to all claims. The unjust enrichment claim, Count III, rests or falls on the underlying substantive claim and its applicable statute of limitations or repose.

## VII. EACH OF THE CLAIMS ARE BARRED BECAUSE THE COMPLAINT ESTABLISHES THAT THE TRANSFERS WERE RECEIVED IN GOOD FAITH AND FOR REASONABLY EQUIVALENT VALUE

Plaintiff misunderstands A-Mark's position on this point. A-Mark does not argue that the Receiver has the burden of proof on the lack of good faith. Rather, regardless of who has the burden of proof, it is clear that the allegations of the Complaint in fact establish the lack of good faith. On the basis of the Complaint itself, A-Mark has met its burden of proof establishing that it accepted the payments of interest and its profit margin on sales and purchases in good faith. A-Mark does not intend that its Motion established good faith; the well-plead allegations in the Complaint by Plaintiff do so.

This is not the usual fraudulent conveyance case where a debtor transfers property out of his name in order to shield it from his creditors. It is not even the typical Ponzi scheme case where the commissions of brokers who induce new investors to participate in the scheme are at issue. This is a vendor who made a legitimate sale of a product on credit where title and possession do not pass until the balance of the price is paid. Any false and fraudulent representations made to the customers of Hunter Wise by Hunter Wise, were not made, participated in, or known to A-Mark, and there is no factual allegation to the contrary.

It is alleged that both Hunter Wise and its customers had large losses. A-Mark does not know, and could not know, whether that is the case. A-Mark sold metal to Hunter Wise on credit (margin) at a price agreed upon at the outset, thereby insulating Hunter Wise from market fluctuation. What Hunter Wise did with its customers, and who its customers were, is unknown to A-Mark. A-Mark had no knowledge or control over how Hunter Wise managed its trades and its contracts with its customers. Typically, dealers such as Hunter Wise have various

methods, such as hedge transactions or other offsetting arrangements to protect against loss. A-Mark is not privy to such arrangements and is not responsible for them.

The interest payments made by Hunter Wise on the balance of the price being carried by A-Mark and for A-Mark's profit margin were received in good faith and for reasonably equivalent value, not merely because they were in the ordinary course of business, although they were. California law requires more than alleged constructive knowledge of wrongdoing, which is what the Complaint alleges, in order to avoid the good faith defense. The detailed Complaint clearly establishes that there are no such facts.

Even Plaintiff's contention that A-Mark had a duty of inquiry when it learned of the CFTC investigation raises no issue because the allegations of the Complaint itself (para. 41) establish that A-Mark satisfied any such duty (by speaking with counsel for Hunter Wise).

Unlike the Plaintiff's argument, A-Mark is not asking the Court to weigh the facts and adjudicate the defense. The allegations of the Complaint itself establish that the level of culpability and knowledge required to avoid a finding good faith does not exist, and any duty of inquiry was satisfied. The Complaint thus establishes that a vendor sold product on credit for which it received interest on the unpaid balance it carried, and made a profit as vendors do. The conclusory, nonfactual allegations of the lack of good faith and the lack of reasonably equivalent value do not overcome the factual allegations of a standard, good faith and reasonable commercial transaction.

For example, Plaintiff argues that it alleged the failure of A-Mark to provide reasonably equivalent value, citing Paragraphs 47, 68 and 77 of the Complaint. However, those allegations are not well-pled allegations of fact; they are merely bare, conclusory statements. Conclusory allegations and legal

conclusions are not to be accepted in a Rule 12(b) Motion. *R2 Invs. LDC v. Phillips* (5th Cir. 2005) 401 F.3d 638, 642. The most detailed paragraph is 47, but the sentence Plaintiff refers to is:

> "Defendant did not provide reasonably equivalent value in exchange for the Transfers from the fraudulent and insolvent HW Entities."

It then further alleges that A-Mark did not purchase and deliver physical metals or hold physical metals titled in the name of Hunter Wise or its customers for the margin transactions. While that is true, it does not establish the lack of reasonably equivalent value. This was a credit (or margin) sale. Hunter Wise did in fact purchase metal, but until it paid the financed balance of the purchase price, and not just upon making a small down payment, A-Mark simply inventoried sufficient metal so that it could title physical metal in the name of Hunter Wise when the metal was paid for. In entering into the margin transaction, A-Mark obligated itself to continuously have the metal available for Hunter Wise, and obligated itself to complete the sale at some unknown future date at the fixed price the parties agreed to at the time the trade was initiated. A vendor being paid interest on a credit purchase, unless contrary facts are alleged, which is not the case here, is necessarily a good faith and typical commercial transaction.

**A. <u>UVTA and Fraudulent Conveyance Claims Do Not Encompass the Type of Commercial Transactions in This Case</u>**

Both the California courts and the Federal Courts interpreting California law provide strong language that the purpose of UVTA claims is to prevent debtors from making transfers intended to insulate assets from the claims of creditors. The Ninth Circuit has made this premise clear:

"The purpose is not to identify binding agreements, but to identify transfers made with no rational purpose except to avoid creditors." *Donell v.*

*Kowell* (2008) 533 F.2d 762, 777.

Numerous cases emphasize the fact that the purpose of these laws is to avoid concealment of assets. Witkin broadly defines fraudulent transfers:

> "[B]roadly speaking, it is a transfer by a debtor of some property interest with the object or effect of preventing creditors from reaching that interest to satisfy their claims." (8 Witkin, California Procedure, 5th Ed., Enforcement of Judgment, Section 479, p. 516)

Virtually the entire claim of Plaintiff is comprised of interest payments on margin purchases.[2] A small portion of the claim, is A-Mark's profit margin charged to its customer, Hunter Wise, on trades of physical metal which Plaintiff characterizes as the "spread."

The Complaint in Paragraphs 36 and 37 describes the margin transactions as a trades in which Hunter Wise agreed to purchase a fixed quantity of metal for a fixed price, thereby insulating the trade from market fluctuation, on margin, making a small down payment and paying interest on the unpaid balance until the balance is paid, plus paying A-Mark's profit margin on the transaction, which A-Mark as a wholesaler is entitled to. This is a typical commercial good faith transaction, and no facts to the contrary are alleged.

**B. Good Faith Exists in the Absence of Collusion or Active Participation in the Alleged Fraud**

Quotes from older Bankruptcy Court decisions attempting to interpret California law are not adequate authority to overcome the holding of the California Courts' interpretation of California law. California Courts have held that the good faith defense is established where the transferee did not collude with the debtor or otherwise actively participate in the debtor's fraudulent scheme.

---

[2] The Complaint states that the margin transactions constituted more than 99.3% of the trading activity between Hunter Wise and A-Mark (Paragraph 36, p.15, lines 8-9).

In *Lewis v. Superior Court* (1994) 30 Cal.App.4th 1850, 1958-1859, the Court held:

> "The requirements of the fraudulent conveyance statute are: 'the term 'good faith,' as used in this subdivision and subdivision (d) [of Civil Code Section 3439.08] means that the transferee did not collude with the debtor or otherwise actively participate in the fraudulent scheme of the debtor.' (See legis. committee com. 12 West's Ann.Civ.Code (1994 pocket supp.) p. 161.) 'Fraudulent intent,' 'collusion,' 'active participation,' 'fraudulent scheme'—this is the language of deliberate wrongful conduct. It belies any notion that one can become a fraudulent transferee by accident, or even negligently. It certainly belies the notion that guilty knowledge can be created by the fiction of constructive notice. (See *Richardson v. White* (1861) 18 Cal. 102, 106 [recognizing that constructive notice is a "fiction"].)"

In *Annod Corp. v. Hamilton and Samuels* (2002) 100 Cal.App. 4th 1286, the landlord of a commercial law firm lease sued the law firm partners seeking to avoid the transfers of draws paid by the debtor partnership to the partners, while failing to pay the landlord. The landlord argued that the payment of partner draws instead of rent was fraudulent, and also that the partners did not receive the draws in good faith since they were taking their draws while knowing and disregarding their legal obligation to the landlord. The court, relying upon a prior case, stated as follows:

> "This is reading too much into the good faith requirement, however. As stated in *Lewis v. Superior Court* (1994) 30 Cal.App.4th 1850, 1858–1859, 37, with reference to the Legislative Committee comments, '[f]raudulent intent,' 'collusion,' 'active participation,' 'fraudulent scheme'—this is the language of deliberate wrongful

> conduct.' *Annod* cites no authority for the proposition that accepting partnership compensation with the knowledge that lease payments are overdue is tantamount to the participation in a fraudulent scheme." (100 Cal.App. 4th at 1299-1300.)

A wholesaler who sells product to a dealer on credit is not subject to the reach of fraudulent conveyance law merely because the dealer is defrauding its customers by misrepresenting the nature of the dealer's transaction with the wholesaler, at least without actual collusion or active participation in the fraud by the wholesaler. No such additional circumstances exist here and the Receiver's attempt to locate a deep pocket should fail.

**C. <u>The Conclusory Allegation that A-Mark's Trades Assisted Hunter Wise to Violate the Dodd-Frank Act, is Not Supported by the Complaint</u>**

The Complaint (para. 39) alleges that the Hunter Wise trades with A-Mark "assisted the HW Entities to violate the Dodd-Frank Act and perpetuate the fraudulent scheme . . . ." The conclusory allegation is not factually supported by the Complaint, and is not, and cannot be, an allegation that overcomes the factual allegations establishing the good faith commercial transactions. This is comparable to an allegation that a Chevrolet dealer should be liable because its customer resold the Chevrolet to a third-party, misrepresenting it as a Cadillac. While the Chevrolet dealer did in fact provide the vehicle which was the subject of its customers' fraud, the defrauded consumer is not entitled to the Chevrolet dealer's profit as a fraudulent conveyance. A-Mark did not participate in the alleged fraudulent representations apparently made by Hunter Wise to its customers, and cannot be responsible if Hunter Wise made misrepresentations to its customers.

Similarly, if the Hunter Wise trades with its customers violated the technical requirements of the Dodd-Frank Act, A-Mark would not know that. Not

all trades violate the Act. Trades on behalf of Hunter Wise itself would not violate the Act. Trades on behalf of certain qualified investors would not violate the Act. Hunter Wise had other suppliers and A-Mark had no way of knowing on whose behalf the trade initiated by Hunter Wise was being made or how Hunter Wise allocated its trades between A-Mark and A-Mark's competitors. Even a violation of the Dodd-Frank Act does not create an inference of knowledge on the part of A-Mark.

In addition, if, as Plaintiff alleges, Hunter Wise engaged in fraud and misrepresentations, compliance with the Dodd-Frank Act would not have avoided the fraud. Consequently, Plaintiff's allegations regarding the Dodd Frank Act are simply irrelevant to any losses sustained by Hunter Wise or its customers.

## VIII. <u>COUNT III FOR UNJUST ENRICHMENT DOES NOT STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED – UNJUST ENRICHMENT IS MERELY A REMEDY</u>

Count III stands or falls in accordance with the validity of Counts I and II.

As stated in *Levine v. Blue Shield of California* (2010) 189 Cal.App. 4th 1117, p. 1138, *re-hearing den., review den.*:

> "Although some California courts have suggested the existence of a separate cause of action for unjust enrichment *(Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1593, 80 Cal.Rptr.3d 316 [listing elements] ), this court has recently held that " '[t]here is no cause of action in California for unjust enrichment.' [Citations.] Unjust enrichment is synonymous with restitution. [Citation.]" (*Durell*, <u>supra</u>, 183 Cal.App.4th at p. 1370, 108 Cal.Rptr.3d 682.) Thus, the Levines' unjust enrichment claim does not properly state a cause of action."

Even the courts which have suggested the possibility of a separate

claim for unjust enrichment hold that the claim does not exist in any event if there is a contractual relationship between the transferor and the transferee, as there is here. As stated in *Durell v. Sharp Healthcare*, 183 Cal.App. 4th 1350, 1370:

> "As a matter of law, an unjust enrichment claim does not lie where the parties have an enforceable express contract. (*California Medical Assn. v. Aetna U.S. Healthcare of California, Inc*. (2001) 94 Cal.App.4th 151, 172, 114 Cal.Rptr.2d 109.)"

The Receiver argues that there is no contract between A-Mark and the Receiver. The Receiver misreads the doctrine. The contract which includes an unjust enrichment claim is the contract between the transferor and the transferee, being Hunter Wise and A-Mark.

If, as the Receiver suggests, unjust enrichment is merely a remedy comprised of restitution, then it clearly is not a claim upon which relief can be granted. It is simply relief which constitutes an element of the prayer and a substantive cause of action, and not a claim unto itself.

Therefore, Count III should be dismissed.

## IX. CONCLUSION

Defendant respectfully submits that its Motion should be granted because:

1. The statutory claims are barred by the four-year statute of limitations (Civil Code Section 3439.09).

2. All claims relating to transfers prior to September 22, 2009 are barred by the seven-year statute of repose (Civil Code Section 3439.09(c)).

3. The Complaint establishes that all claims under Count I, and the associated claims under Count III (Unjust Enrichment), do not state a claim upon which relief can be granted because the alleged transfers were for reasonably equivalent value and accepted in good faith.

4. The Complaint establishes that all claims under Count II, and the associated claims under Count III (Unjust Enrichment), do not state a claim upon which relief can be granted because the alleged transfers were for reasonably equivalent value.

Dated: December 1, 2016

Respectfully submitted,

LAW OFFICES OF RICHARD C. SPENCER, P.C.

By: ____/s/ Richard C. Spencer________

RICHARD C. SPENCER
Attorneys for Defendant
A-MARK PRECIOUS METALS, INC.
624 South Grand Avenue
One Wilshire Building, Suite 2200
Los Angeles, California 90017
Phone: (213) 629-7900
Fax: (213) 629-7990
Email: rspencer@rspencerlaw.com